**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MARIA GARCIA,<br><br>    Plaintiff,<br><br>v.<br><br>DECALO MEDICAL GROUP, LLC, *et al.*,<br><br>    Defendants. | **Civil Action No.: MAB 14-CV-00301** |

**MEMORANDUM ORDER**

Pending before the Court is the parties' Joint Motion for Settlement ("Motion for Settlement"). Joint Mot. for Settlement (Approval of Proposed Settlement Agreement) ("Mot. for Settlement"), ECF No. 37 ; *see also* Joint Mot. for Settlement (Mem. of Points and Authorities in Supp. of the Joint Mot. for Approval of Proposed Settlement Agreement) ("Mem"), ECF No. 38.

On January 30, 2014, plaintiff Maria Garcia ("Garcia") filed a Complaint against Defendants Decalo Medical Group, LLC, John Aziz, M.D. and Yvonne Linke in this court pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), Maryland Wage Payment and Collection Law ("MWPCL") and the Maryland Wage and Hour Law ("MWHL"). Compl. ¶¶ 36-57. The case was referred to mediation on July 10, 2015 (ECF No. 34) and a settlement conference was held on September 15, 2015. On October 27, 2015, parties filed the Motion for Settlement and requested that the settlement agreement be sealed by the court. Mot. for Settlement; *see generally* Consent Mot. to Seal Mem. of Points and Authorities and Ex. A of Joint Mot. for

Approval of Proposed Settlement ("Motion to Seal"), ECF No. 36.  The Court denied the Motion to Seal on November 12, 2015 (ECF No. 39) and the filings were unsealed on December 2, 2015 after neither party elected to withdraw the sealed documents.  The Court, upon due deliberation, now grants the parties' Motion for Settlement.

## BACKGROUND

In this wage and hour overtime case, Plaintiff Maria Garcia and Defendants, Decalo Medical Group ("Decalo"), John Aziz, M.D., and Yvonne Linke, jointly request that the Court enter an order approving the settlement reached between the parties in resolution of a bona fide dispute regarding Plaintiff's entitlement to unpaid wages under the FLSA.[1]  *See generally* Mot. for Settlement; Mem.  The parties agreed to settle this case after a settlement conference before Magistrate Judge Day that took place on September 15, 2015 and filed an executed settlement agreement ("Agreement") along with the pending motion on October 27, 2015.  Mem. Ex. A ("Agreement").  The Agreement provides that, upon court approval, Defendants will pay Plaintiff $70,000 and Plaintiff will discharge and release Defendants from "claims or causes of action which may have arisen while employed by Decalo."  Agreement at 3.  Defendants do not admit liability, but have agreed to the settlement to avoid further litigation and will also seek dismissal of their lawsuit against Plaintiff in the Circuit Court of Prince George's County, Maryland once the pending Agreement is approved by this court.  *Id.* at 2-3, 8.  As part of the settlement, Plaintiff has agreed to dismiss this lawsuit with prejudice.  *Id.* at 10.

---

[1] A comprehensive recitation of facts, including a full procedural history and factual description of the dispute between parties, can be found in this court's previous opinions.  ECF Nos. 30 and 39.

## ANALYSIS

The purpose of the FLSA is to protect workers from the poor wages and long hours that can result from inequalities in bargaining power between employers and employees. *Butler v. Directsat USA, LLC*, 2015 U.S. Dist. LEXIS 118125 (D.Md., Sept. 3, 2015); *Saman v. LBDP, Inc.,* 2013 WL 2949047 (D.Md., June 13, 2013). The statute's provisions are mandatory and not subject to bargaining, waiver or modification by contract or settlement, however there are two narrow exceptions. *Butler,* 2015 U.S. Dist. LEXIS 118125, at *3. The Secretary of Labor may supervise the back payment of wages to employees who waive their rights to seek liquidated damages upon accepting the full amount of wages owed. *See* 29 U.S.C. § 216(c). Alternatively, a district court may approve a settlement between an employer and an employee in an action brought pursuant to Section 216(b) of Title 29 of the U.S. Code, provided that the settlement is a "reasonable compromise of disputed issues" and not simply a "waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1354 (11th Cir. 1982).

The Fourth Circuit has not directly addressed the factors to be considered in deciding a motion for approval of an FLSA settlement, however district courts in this circuit tend to apply the standard set by *Lynn's Food Stores* in the Eleventh Circuit. *Saman.,* 2013 WL 2949047, at *3; *see also Butler,* 2015 U.S. Dist. LEXIS 118125, at *7-8; *Hoffman v. First Student, Inc.,* 2010 WL 1176641, at *2-3 (D.Md. Mar. 23, 2010). Thus, a settlement may be approved if it reflects a fair and reasonable resolution of a bona fide dispute over FLSA provisions and to make this evaluation the district court must determine (1) the existence FLSA issues in dispute, and (2) the fairness and

reasonableness of the proposed settlement terms.  *Saman,* 2013 WL 2949047, at *3, (citing *Lynn's Food Stores*, 679 F.2d at 1355); *see also Lane v. Ko-Me, LLC*, 2011 WL 3880427, at *2-3 (D.Md. Aug 31, 2011); *Lomascolo v. Parsons Brinckerhoff, Inc.,* 2009 WL 3094955, at *10 (E.D.Va. Sept 28, 2009).  When a proposed settlement of FLSA claims also includes a claim for attorney's fees, the court must also assess these for reasonableness.  *Saman*, 2013 WL 2949047, at *6.[2]

### A. Bona Fide Dispute

In assessing the existence of a bona fide dispute between parties under the FLSA, the court examines the pleadings in the case and the representations and recitals in the proposed settlement agreement.  *Duprey v. Scotts Co. LLC,* 30 F.Supp 3d 404, 408 (D.Md. 2014).  Here, in the memorandum supporting their motion for settlement, parties note that "several material facts are in dispute" and that principally the dispute is whether "Plaintiff is entitled to overtime under the FLSA."  Mem. at 2.  Parties disagree as to Plaintiff's status as an exempt or non-exempt employee of Decalo.  *Id.*  Parties also disagree as to the amount of overtime pay to which Plaintiff may be entitled if she were deemed non-exempt: Plaintiff claims she is entitled to

---

[2] In the instant case, Plaintiff agreed to a contingency fee arrangement with her attorneys prior to the commencement of litigation.  This arrangement provided that her attorneys would receive 40 percent of her final award.  FLSA settlements provide for attorney's fees when a plaintiff has prevailed, however these requests are generally filed separately from proposed settlement agreements and require the identification of a prevailing party.  In this case, the proposed arrangement specifies that there is no prevailing party and that $28,000 of the $70,000 total settlement will go Plaintiff's attorneys, with the remaining $42,000 to the Plaintiff.  The court has an obligation to evaluate the reasonableness of attorney's fees and, in this case, the court will consider the Plaintiff's settlement amount to be $42,000 and will evaluate the award of $28,000 in attorney's fees under the appropriate lodestar standard.  This is discussed in more detail below.

approximately $68,000 in overtime pay and Defendants believe she could have only received approximately $50,000. *Id.* Plaintiff has continued to assert this liability and Defendants do not admit any liability in the proposed Agreement. *Id.; see* Agreement, at 2, 8. As discussed in the Court's opinion denying summary judgment, there are genuine issues of material fact in dispute in this case as to whether the Plaintiff falls within the learned professional exception to the FLSA and, thus, whether she is entitled to overtime pay, or her work is exempt from the overtime requirements of the FLSA. The Court is satisfied that the present pleadings and proposed agreement, along with prior court filings in this case, establish the existence of a bona fide dispute pursuant to the FLSA.

### B. Fair and Reasonable Settlement

The court has an obligation to assess the terms of the proposed settlement for fairness and reasonableness. This requires weighing a number of facts, including:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Lomascolo*, 2009 WL 3094955, at *10 (citations omitted). The court may also consider the "risks and costs associated with proceeding further and Defendants' potentially viable defenses" and consider these factors in relation to the settlement amount to evaluate if the settlement reflects "a reasonable compromise over issues actually in

dispute.'" *Saman,* 2013 WL 2949047, at *5 (citing *Lomascolo*, 2009 WL 3094955, at *8).

The Court has reviewed the parties' submissions and considered the factors laid out in *Lomascolo*. The Agreement appears to be a fair and reasonable compromise between the parties. The parties have conducted "extensive discovery," including the exchange of "written discovery" and "Ms. Garcia, Dr. Aziz, and Ms. Linke have all been deposed." Mem. at 3. Litigation has also proceeded to a late-stage, the court having ruled on Plaintiff's Motion for Summary Judgment in June 2015 and the parties having participated in a settlement conference before Judge Day in September 2015. The parties would have now proceeded to a "hearing that would last several days." *Id.* Thus, parties have had ample time to "obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case." *Lomascolo,* 2009 WL 3094955, at *11. Finally, both parties appear to be represented by experienced counsel, have been so throughout the course of litigation, and in their joint motion assert that "there is no evidence of fraud or collusion." Mem. at 3. The agreement itself is a product of negotiations between the attorneys before Judge Day.

Given the above, the central element of the reasonableness question is the probability of plaintiff's success on the merits and the amount of settlement in relation to potential recovery. *Lomascolo*, 2009 WL 3094955, at *10. Plaintiff has argued that she would have received approximately $68,000 in overtime pay if she prevailed on all her claims, and Defendants, without conceding liability, consider Plaintiff's maximum award

would have been $50,000 if she prevailed on the merits. At the summary judgment stage this court ruled that there remained genuine questions as to the scope of Plaintiff's job duties and the time she spent on such duties such that the question of her employment status remained unsettled. *See generally* Order Denying Mot. for Summ. J., ECF No. 30. Parties have not offered any further proof or argument in support of their respective positions. The final proposed settlement amount of $42,000 reflects an award of approximately 61 percent of Plaintiff's total claim of $68,000. Given the degree to which Plaintiff's likelihood of success on the merits rests upon her ability to prevail on the issue of whether she is a non-exempt employee, that losing this issue would result in no recovery, and that the proposed award is 61 percent of her total claim, the settlement amount of $42,000 appears reasonable and fair.

### C. Attorney's Fees

The court has an obligation to assess the Agreement's provisions regarding attorney's fees. As noted above, the Agreement provides a settlement payment to the plaintiff, but does not separately provide for attorney's fees. Plaintiff entered into a contingency fee arrangement with her attorney prior to the start of litigation that would compensate her attorney at 40 percent of plaintiff's total recovery. The existence of the contingency-fee arrangement and the fact that the Agreement does not separately provide for attorney's fees does not absolve the court of its obligation to assess the reasonableness of the amount of Ms. Garcia's settlement that will be used to compensate her counsel. To the contrary, because the attorney's fees are being deducted from the overall value of the settlement, and because the contingent fee is a

rather substantial 40 percent of the settlement amount, it is important that these fees be justified as reasonable.

Generally, contingent-fee arrangements are allowed, and sometimes even preferred, in many common-fund cases, see, e.g., *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 437 (D.Md. 1998) (noting that eight circuits have adopted percentage method), but a district court may abuse its discretion by approving, without an independent evaluation for reasonableness, an FLSA settlement that includes a contingent fee, *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992) (concluding that "it was an abuse of discretion for the district court . . . to forgo the lodestar approach and to calculate reasonable attorney's fees by adopting instead the attorney's customary contingent-fee arrangement"); *Llora v. H. K. Research Corp.*, 129 F.3d 117 (4th Cir. 1997) (concluding that "it was an abuse of discretion for the district court to award attorney's fees that equaled one-third of the judgment award without adequately explaining its reasoning for failing to use the lodestar amount").  This is because "permitting contractual waiver of . . . the right to minimum wage, overtime compensation, liquidated damages, and attorney's fees—would nullify the purposes of the [FLSA]." *Walthour v. Chipio Windshield Repair, LLC*, 944 F. Supp. 2d 1267, 1272 (N.D. Ga. 2013), *aff'd*, 745 F.3d 1326 (11th Cir. 2014), *cert. denied*, 134 S. Ct. 2886 (2014).

Consequently, allowing a contingent fee that distributes a percentage of the damages award to the attorney, effectively allowing the employee to waive both the statutorily-mandated attorney's fees and the portion of her wages and liquidated damages allocated to attorney's fees, would be an impermissible infringement on the

statutory award to the employee. *See Walthour*, 944 F. Supp. 2d at 1272; *see also Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 & n.16, 65 S.Ct. 895, 902 (1945) (noting congressional intent to avoid impermissible infringement on a statutory award pursuant to the FLSA). Nonetheless, an attorney's fee award negotiated pursuant to a contingent-fee arrangement can be approved if the court finds (1) that the fees were negotiated separately from the damages, so that they do not infringe on the employee's statutory award, and (2) that they are reasonable under the lodestar approach. *See Saman,* 2013 WL 2949047, at *6.

Parties claim that plaintiff entered into a contingency-fee arrangement with her attorneys, presumably at the outset of litigation. Mem. at 6-7. They also note that the "fee arrangement was negotiated separately from the damages provided in the Proposed Settlement Agreement." *Id.* at 6. As noted above, Plaintiff's net recovery, after payment of the attorney's fees, has been evaluated by the Court and determined to be fair and reasonable. The only question remaining is whether the amount being allocated to the attorney's fees is reasonable and within the range of attorney's fees approved by Maryland courts.

The Court considers the reasonableness of the proposed attorney's fees of $28,000 by employing the lodestar approach of "multiplying the number of hours reasonably expended by a reasonable hourly rate." *Butler,* 2015 U.S. Dist. LEXIS 118125, at *11 (citing *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 243 (4th Cir. 2009)). As is common in the Fourth Circuit, the Court will also consider:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the

> instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978) ("12-point analysis"). Finally, the Court will follow the detailed guidance on submission and determination of attorney's fees provided in the Maryland Local Rules Appendix B. U.S. District Court of Maryland Local Rules (July 1, 2014) – March 2015 Supplement, Appendix B ("App. B") at 122.

The Agreement states that "the [p]arties further agree that, by virtue of this Release and Settlement, there is no prevailing party, and Ms. Garcia is not entitled to an award of attorneys' fees." Agreement at 8. Ms. Garcia and her attorneys however, entered into a contingency-fee arrangement prior to the start of litigation pursuant to which, Ms. Garcia's attorneys would receive 40 percent of her settlement. Mem. at 6. In their memorandum in support of settlement, parties state that the "fee arrangement was negotiated separately from the damages provided in the Proposed Settlement Agreement. The parties knew about Plaintiff's contingent-fee arrangement and that the settlement encompassed attorney's fees." Mem. at 6-7. Plaintiff's attorneys would therefore be entitled to $28,000 of her total $70,000 settlement. Plaintiff's attorneys claim that this is a reasonable fee using either the lodestar approach or the 12 factors identified in *Barber*. *Id.* at 6.

A lodestar analysis requires the court to multiply the number of hours reasonably expended by a reasonable hourly rate. *Butler,* 2015 U.S. Dist. LEXIS 118125, at *11.

According to the Maryland Local Rules, Appendix B, a reasonable hourly fee for attorneys with less than five years of experience ranges from $150-225, and for attorneys with more than 20 years of experience ranges from $300-475.  App. B. at 122.  Of the five attorneys who worked on this case, two had more than twenty years of experience and three had fewer than five years of experience.  *See* Mem. Ex. B-D.  According to the time records submitted to this court, plaintiff's attorneys collectively (without regard to years of experience) spent 219.75 hours on this case.[3]  Supp. Mem. of Points and Authorities in Supp. of the Joint Mot. for Approval of Proposed Settlement Agreement ("Supp. Mem."), ECF No. 41.  Thus, a total fee of $28,000 is equivalent to an hourly rate of $127.42, which is well below the reasonable hourly fee for attorneys with less than 5 years of experience.  Thus, pursuant to the Maryland guidelines, a total amount of attorney's fees of $28,000 is reasonable and below the customary fee in Maryland for the legal work involved.

      Turning to the 12-point analysis set forth in *Barber,* the Court will review the proposed attorney's fees to the extent that it is possible to do so in the absence of parties' having made a showing under this standard.  577 F.2d. at 226.  It is clear from the documents submitted to court that litigating this case caused Plaintiff's attorneys to incur time and labor costs.  According to the time records submitted to this court, Plaintiff's attorneys commenced work on this

---

[3] The Court has reviewed these records in accordance with the guidelines of Appendix B of the Maryland Local Rules.  While these time records could be adjusted downward by 12.3 hours to account for multiple attorneys attending the settlement conference, time spent on recovery of attorney's fees, and 1.5 hours that may have been mis-billed or mis-coded (relating to a preliminary injunction), doing so would not substantively impact the Court's analysis of the time records.

case in late 2013 and have expended approximately 219.75 hours on the case.[4] Given this time expenditure, it is evident that taking Plaintiff's case resulted in an opportunity cost for counsel to the extent that it prevented them from pursuing other cases.

The 12-point analysis additionally requires the court to consider the skill and knowledge required to successfully litigate the case at bar, the novelty or difficulty presented by the case, and the level of experience possessed by plaintiff's attorneys. Generally, to successfully pursue an FLSA case, plaintiff's attorneys must possess a range of specialized skills and current knowledge of legal developments in order to properly navigate discovery, withstand motions, and prove liability.  Here, parties do not submit arguments regarding the novelty and difficulty of the questions presented by this case.  The Court however recognizes that wage and hour cases pose certain challenges, particularly where the issue of exempt employee status is raised, and that this case posed unique difficulties in establishing the Plaintiff's scope of duties as they related to her educational and professional background.  Counsel for Plaintiff have an active employment law practice and Alan Lescht & Associates, P.C. are experienced employment lawyers representing employees in the federal government and private

---

[4] Breakdown of time and labor costs was submitted to the court and is as follows: Case development, background investigation and case administration: 15.20 hours; Pleadings: 12.75 hours; Interrogatories, document production, and other written discovery: 22.45 hours; Depositions: 26.25 hours; Motions practice: 123.55 hours; ADR: 19.55 hours.  Supp. Mem.

sector.[5]  Plaintiff's attorneys have legal experience ranging from 2-33 years.[6]  Thus, it appears that plaintiff's attorneys are adequately skilled and experienced in matters of employment law and that plaintiff's FLSA case posed sufficient challenges such that it would be reasonable to compensate the attorneys for their time and labor.

The court must also consider the length and nature of the relationship between the attorneys and plaintiff, as well as the attorneys' expectations at the outset of the case.  Alan Lescht & Associates have evidently represented Plaintiff in this case since late-2013 and have been counsel for her in this matter for the entire period of active litigation underway since January 2014.  *See generally* Supp. Mem. and Exs. A-F.  Since late 2013, Plaintiff's counsel have expended numerous hours of professional time on this case.  *Id.*  As is common in contingency-fee cases, payment of the firm's fees was dependent on a successful outcome in the case.  Thus, the attorneys bore the risk of litigating the case in the event that there was no successful outcome.  Parties claim in their joint motion that Plaintiff's counsel could have charged between $33,535 and $50,380 for the work performed on this case. Mem. at 7.  The contingency-fee arrangement of 40 percent was thus designed to provide adequate payment for time and labor cost in the event of a successful outcome and took into consideration the risk

---

[5] Alan Lescht & Associates, P.C., http://www.dcemploymentattorney.com/ (last visited on Dec 23, 2015).

[6] Mr. Lescht has been a licensed attorney since 1988 and performed approximately five hours of work on the case.  Mem. at 7; Supp. Mem.  Ms. Kruger has been a licensed attorney since 1983 and performed approximately 16 hours of work on the case.  *Id.*  Constance Travanty has been licensed since 2011 and performed approximately 36 hours of work on the case.  *Id.*  Stephanie Ruiter has been licensed since 2010 and performed approximately 78 hours of work on the case.  *Id.*  Sara McDonough has been licensed since 2013 and performed approximately 66.7 hours of work on the case.  *Id.*

borne by attorneys in taking this case without an upfront payment to cover the cost of litigation.

Finally, the court turns to the settlement award. Per the Agreement, Defendants will pay Plaintiff a total of $70,000, 40 percent of which will be used to compensate her attorneys. Thus, the Court considers Plaintiff's actual award to be $42,000 and attorney's fees to be $28,000. Plaintiff's net award of $42,000 represents 61 percent of her initial claim. Plaintiff has not prevailed on the merits at this stage, but rather has accepted the terms of the Agreement. As the Court noted above, Plaintiff's likelihood of success on the merits in the event of a trial would have depended on her ability to sufficiently prove her employment status and the number of hours worked overtime. In the absence of further litigation, Plaintiff's award of $42,000 represents a successful outcome in her case for wages due. Plaintiff notes that courts in Maryland have previously approved settlements where plaintiffs recovered 32 percent of maximum recovery (*Edelen v. Am. Residential Servs., LLC,* 2013 U.S. Dist. LEXIS 102373, at *29-31 (D.Md. July 22, 2013)) and 66 percent of maximum potential recovery (*Rivera v. Dixson,* 2015 U.S. Dist. LEXIS 11248, at *7 (D.Md. Jan 29, 2015)). Plaintiff also notes that Maryland courts have previously approved a settlement that provided for $27,723.55 for 145.8 hours of work. *Pitts v. Levy Family Assocs., LLC,* 2015 U.S. Dist. LEXIS 56191, at * 14-15 (D.Md. Apr. 27, 2015).

Examined in its totality, the Court considers that when plaintiff has recovered 61 percent of the potential maximum recovery and attorney's fees are well within the reasonable hourly guidelines as determined by the Maryland Local Rules, attorney's

fees of $28,000 are reasonable pursuant to the 12-point analysis[7] and in accordance with the lodestar approach.

## CONCLUSION

For the foregoing reasons, the parties' joint Motion for Settlement will be granted and the accompanying Settlement Agreement approved.

It is **ORDERED** that the Motions for Settlement (ECF Nos. 37 and 38) are **GRANTED**.

                                                         /s/
                                         Mark A. Barnett, Judge
                                         United States Court of International Trade
                                         (sitting by designation)

Date: December 23, 2015

---

[7] While the Court did not have any information at its disposal regarding any time limitations imposed by the client or the undesirability of the case within the legal community in which the suit arose, the Court has no reason to believe that these considerations would have significantly impacted its analysis of the reasonableness of the attorney's fees in this case.